## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

STEPHEN CHRISTOPHER WRIGHT,

        Plaintiff,

v.

PAUL ZIRIAX,

        Defendant.

**Case No.: 20-cv-287**

## DEFENDANT'S RESPONSE AND OBJECTION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND BRIEF IN SUPPORT THEREOF

Defendant Paul Ziriax, in his official and individual capacities, by and through his counsel of record Assistant Attorney General Desiree D. Singer, and respectfully request that this Court deny Plaintiff's Motion for Preliminary Injunction [Doc. 32]. In support of this Objection, Defendant submits the following brief.

## BRIEF IN SUPPORT

### STATEMENT OF THE CASE

Plaintiff brings this case pursuant to 42 U.S.C. § 1983 alleging violations of his Fourteenth Amendment right to due process because his Declaration of Candidacy was denied due to his failure to accompany it with the filing fee or alternative petition containing signatures of at least 2% of the district's registered voters as required by OKLA. STAT. tit. 26, § 5-112. Plaintiff asserts the recommended social distancing aimed to prevent the spread of COVID-19 prevented him from gathering signatures in support of his petition, violating his right as a pauper to run for office, and that such a requirement does not comport with constitutional requirements to run for office. Plaintiff seeks monetary damages in the amount of $348,000 and a permanent injunction ordering any individual seeking to run for office to

be included on the ballot without payment of a filing fee or submission of signature petition. Plaintiff also seeks relief in the form of his name being placed on the November 2020 ballot for the office of United States Representative. Plaintiff's Motion for Preliminary Injunction similarly requests that his name be placed on the November 2020 ballot for the office of Untied States Representative. For the reasons set forth below, Plaintiff's Motion should be denied.

## STANDARD OF REVIEW

A preliminary injunction is an "extraordinary remedy that is granted only when the movant's right to relief [is] clear and unequivocal." *First W. Capital Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1145 (10th Cir. 2017) (alteration in original) (citation and internal quotation marks omitted). To obtain a preliminary injunction, Plaintiff must establish (1) "a substantial likelihood of success on the merits;" (2) "irreparable harm to the movant if the injunction is denied;" (3) "the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party;" and (4) "the injunction, if issued, will not adversely affect the public interest." *General Motors Corp. v. Urban Gorilla, LLC,* 500 F.3d 1222, 1226 (10th Cir. 2007). Preliminary injunctions are intended "merely to preserve the relative positions of the parties until a trial on the merits can be held." *Summum v. Pleasant Grove City*, 483 F.3d 1044, 1048 (10th Cir. 2007). Because of this purpose and the extraordinary nature of preliminary injunctions, movants must meet "a heightened standard" when seeking one of the three historically disfavored injunctions: "(1) preliminary injunctions that alter the *status quo*; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits." *Id.* at 1048

(citations and quotations omitted).  When a movant seeks one of these historically disfavored forms of injunction, the movant must "make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms."[1]  *Id.*  The preliminary injunction requested by Plaintiff is subject to heightened scrutiny because Plaintiff seeks to alter the *status quo*, because he seeks a mandatory injunction, and because the preliminary injunction he seeks would grant the same relief he ultimately seeks from a final ruling on the merits.

## ARGUMENT AND AUTHORITY

**PROPOSITION I:        PLAINTIFF FAILS TO SHOW A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS**

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV. "The [Equal Protection] Clause creates no substantive rights. Instead, it embodies a general rule that States must treat like cases alike but may treat unlike cases accordingly." *Teigen v. Renfrow*, 511 F.3d 1072, 1083 (10th Cir. 2007) (quoting *Vacco v. Quill,* 521 U.S. 793, 799 (1997))(internal quotation marks omitted). "The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432,

---

[1]  Generally, if a movant makes a strong showing on the first three elements, a relaxed standard is applied to the success on the merits element. *Okla., ex rel., OK Tax Comm'n v. Int'l Registration Plan, Inc.*, 455 F.3d 1107, 113 (10th Cir. 2006).  However, where, as here, a movant seeks to enjoin the enforcement of a statute, the movant "must meet the traditional 'substantial likelihood of success' standard."  *Nova Health Systems v. Edmondson*, 460 F.3d 1295, 1298 n.6 (10th Cir. 2006).  The relaxed standard is also inapplicable here because plaintiff seeks a historically disfavored form of injunction.

440 (1985) (citations omitted). Laws creating classifications based on suspect classifications like race, gender, or national origin or those burdening fundamental rights receive heightened scrutiny. *Id.* at 440-41. Financial need alone is not a suspect classification for the purposes of the Fourteenth Amendment. *Harris v. McRae*, 448 U.S. 297, 323 (1980) (citations omitted).

However, the requirements challenged by Plaintiff do not create any classifications, therefore the Equal Protection Clause does not apply. Rather, the statute creates two (2) distinct paths to the ballot, neither of which is forced upon any candidate, regardless of financial standing. Any candidate may choose either to pay a filing fee, file a signature petition, or both. All potential candidates are subject to the same requirements. Yet, even if the statute does create classifications, Plaintiff fails to establish that those requirements place an undue burden on his constitutional rights. Instead, Plaintiff merely states in his Motion that it does without providing any authority supporting this conclusory statement.

Certainly, "[a]ccess to the ballot and the ballot box is the necessary catalyst in the carefully calibrated system of individual freedoms and separation of powers crafted by our founding fathers." *Utah Republican Party v. Cox*, 892 F.3d 1066, 1076 (10th Cir. 2018), *cert. denied,* 139 S.Ct. 1290 (2019). Thus, courts take a great deal of care in scrutinizing any regulation that appears to limit this right. *Id.* This does not mean, however, that states are barred from passing reasonable, nondiscriminatory electoral regulations. *Id.*

The United States Constitution grants states the authority to establish "[t]he Times, Places and Manner of Holding Elections for Senators and Representatives," U.S. CONST. art. I, § 4, cl. 1. In fact, the Supreme Court has recognized that, practically speaking, "there must be a substantial regulation of elections if they are to be fair and honest and if some sort of

order, rather than chaos, is to accompany the democratic processes." *Storer v. Brown*, 415 U.S.
724, 730 (1974). Such regulations, while they will invariably burden someone in some respect,
must also accommodate these legitimate state interests. *Utah Republican Party*, at 1077 (citing
*Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983), *Timmons v. Twin Cities Area New Party*, 520 U.S.
351, 358 (1997)). "The states 'have important interests in protecting the integrity of
their political processes from frivolous or fraudulent candidacies, in ensuring that their
election processes are efficient, in avoiding voter confusion caused by an overcrowded ballot,
and in avoiding the expense and burden of run-off elections.'" *Utah Republican Party v. Cox*,
892 F.3d 1066, 1089–90 (10th Cir. 2018), *cert. denied*, 139 S.Ct. 1290 (2019) (citing *Clements v.
Fashing*, 457 U.S. 957 (1982), *Arutunoff v. Okla. St. Election Bd.*, 687 F.2d 1375, 1378 (10th Cir.
1982)).

To evaluate electoral regulations, courts utilize the balancing test set forth in *Anderson
v. Celebrezze*, 460 U.S. 780 (1983) and *Burdick v. Takushi*, 504 U.S. 428 (1992). Courts

> must weigh "the character and magnitude of the asserted injury to the rights
> protected by the First and Fourteenth Amendments that the plaintiff seeks to
> vindicate" against the "precise interests put forward by the State as justifications
> for the burden imposed by its rule," taking into consideration "the extent to
> which those interests make it necessary to burden the plaintiff's rights."

*Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 789).

"Petition requirements are a constitutional method of serving a state's legitimate
interest in requiring a showing of a significant modicum of support before adding
a candidate to an election ballot," *Utah Republican Party v. Cox*, 892 F.3d 1066, 1089 (10th Cir.
2018), *cert. denied*, 139 S.Ct. 1290 (2019) (quoting *Arutunoff v. Okla. St. Election Bd.*, 687 F.2d
1375, 1378 (10th Cir. 1982)) (internal citation and quotation marks omitted). Further, the

Supreme Court has held that filing fees, as an alternative not an absolute, requirement for candidate access to the ballot are constitutional. *Lubin v. Panish*, 415 U.S. 709, 718-19 (1974).

OKLA. STAT. tit. 26, § 5-112 is constitutional on its face. § 5-112 provides two (2) distinct mechanisms by which individuals may satisfy their declaration of candidacy requirements: (1) filing a petition signed by at least two percent (2%) of registered voters in the district, county, or state relevant to the office sought, or (2) by paying a filing fee in an amount specific to the office sought. Both of these methods satisfy the State's interest in ensuring both the seriousness of candidates running for office and in ensuring order to the electoral process. Further, these are *alternative* means for access to the ballot, not absolute. The statute does not discriminate against indigent individuals because a financial burden is not a complete bar to being placed on the ballot.

If Plaintiff were to have his way, it could lead to chaos at the ballot box by encouraging "laundry list" ballots naming countless individuals for each available office. Laundry list ballots are recognized as discouraging to voter participation and overwhelming and confusing to voters who do exercise their right to vote on election day. *Lubin*, at 715. Thus, any burden that may be placed on Plaintiff is outweighed by the legitimate interests of the State. OKLA. STAT. tit. 26, § 5-112 is constitutional on its face.

Section 5-112 is also constitutional as applied to Plaintiff. There was nothing affirmatively barring Plaintiff from gathering petition signatures to satisfy this alternative means of ballot access prior to the coronavirus pandemic impacting Oklahoma. It was not until March 17, 2020, that Governor Kevin Stitt issued an Executive Order recommending that Oklahomans follow the recommendations of the Trump Administration's

recommendations as to social distancing. Executive Order 2020-08, March 17, 2020, available at https://www.sos.ok.gov/documents/executive/1915.pdf. Plaintiff was required to file his Declaration of Candidacy, accompanied by either a filing fee or petition, no later than 5:00 p.m. on April 10, 2020. OKLA. STAT. tit. 26, § 5-110. Plaintiff's choice to procrastinate and delay the process, which is then interrupted by unforeseen circumstances wholly outside of any person's control, certainly does not render statutory requirements unconstitutional.

Notwithstanding the COVID-19 pandemic, § 5-112 is narrowly tailored to meet the State's interest in "requiring a showing of a significant modicum of support before adding a candidate to an election ballot," *Utah Republican Party v. Cox*, 892 F.3d 1066, 1089 (10th Cir. 2018), *cert. denied*, 139 S.Ct. 1290 (2019) (citation omitted). The statute requires signatures from a mere two percent (2%) of registered voters from the relevant district. The use of a percentage rather than a set number is evidence of narrow tailoring. While a set number could be arbitrary given the size of different voting districts, a small percentage allows for variance specific to those districts. Stripping away all candidacy requirements as Plaintiff seeks to do here, would not allow the State to protect its legitimate interests as discussed above. Plaintiff's Motion fails to establish that he will succeed on the merits of his claim. Dismissal is appropriate.

**PROPOSITION II:**        **PLAINTIFF FAILS TO ESTABLISH IRREPARABLE HARM IF THE INJUNCTION IS DENIED**

Plaintiff will not suffer irreparable harm if an injunction is denied. He asserts that if this Court does not intervene now, he will not be able to be placed on the November ballot and his "federally protected right to run for public office" would have successfully been violated. [Doc. 32] at 2. However, regardless of this Court's ruling on the present motion, it is likely too late to have Plaintiff's name added to the ballot in time for the election in less than

fifty (50) days. Plaintiff himself acknowledges this in his Motion. *Id.* Therefore, any irreparable harm, if there was any, would not be resolved even by a granting of an injunction. Beyond this, as discussed above, Plaintiff's non-inclusion on this November's ballot was largely the result of his own failure to attempt to safely gather signatures. Self-inflicted harm is not considered irreparable for the purposes of a motion for preliminary injunction. *Salt Lake Tribune Pub. Co., LLC v. AT & T Corp.,* 320 F.3d 1081, 1106 (10th Cir. 2003). Plaintiff's Motion should be denied.

**PROPOSITION III:      PLAINTIFF CANNOT ESTABLISH THAT ANY THREATENED INJURY WILL OUTWEIGH HARM CAUSED TO DEFENDANT.**

If the Court grants the Plaintiff's Motion, Defendant will be forced to scramble to reprint thousands of ballots and distribute them in time for the election on November 3, 2020, a mere forty-six (46) days from the filing of this Response and even fewer days considering the time required for Plaintiff to file a Reply and the Court to consider the pleadings and issue an order. If it is even possible to change the ballots at that point, it would take tremendous effort and likely cost in order to do so (e.g. rushed printing, overtime pay for employees involved in preparation and distribution). On the other hand, if the Court were to deny Plaintiff's motion, he would still have the opportunity to be monetarily compensated should he be found so entitled, and he would still have the chance to run for office during the next election cycle. The harm that Defendant would suffer far outweighs any harm Plaintiff might suffer if the injunction is denied, thus the Court should deny Plaintiff's Motion on this basis.

## CONCLUSION

Plaintiff's Motion for Preliminary Injunction does not seek "merely to preserve the relative positions of the parties until a trial on the merits[.] *Summum v. Pleasant Grove City*, 483 F.3d 1044, 1048 (10th Cir. 2007). Instead, Plaintiff attempts to go through back door channels to achieve his ultimate goal of being placed on this November's ballot while circumventing the constitutional *de minimus* requirements established by Oklahoma law to run for office. For this and the justifications set forth fully herein, Defendant respectfully requests that this Court deny Plaintiff's Motion for Preliminary Injunction and grant any other such relief as the Court deems just and proper.

Respectfully submitted,

*/s/* Desiree D. Singer
**DESIREE D. SINGER, OBA # 33053**
Assistant Attorney General
Office of Attorney General
Litigation Unit
313 NE 21st St.
Oklahoma City, OK 73105
T: (405) 521-3921
F: (405) 521-4518
Email: desiree.singer@oag.ok.gov
*Attorney for Paul Ziriax*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 18th day September 2020, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing. I further that a true and correct copy of the foregoing document was sent via U.S. Mail, postage prepaid to the following who is note a registered participant of the ECF System:

Stephen Wright
6520 NW 22nd St.
Bethany, OK 73008
*Plaintiff pro se*

<u>/*s*/ Desiree D. Singer</u>
Desiree D. Singer