IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STEPHEN CHRISTOPHER WRIGHT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-20-00287-JD |
| ) | |
| PAUL ZIRIAX, ) | |
| ) | |
| Defendant. ) | |

### ORDER

Before the Court is the Motion to Dismiss filed by Defendant Paul Ziriax ("Motion") [Doc. No. 33]. The Motion seeks to dismiss the Amended Complaint filed by Plaintiff Stephen Christopher Wright ("Mr. Wright"). [*See* Doc. No. 25]. For the reasons stated below, the Court grants the Motion and dismisses this action without prejudice.

**I.   Background**

The Constitution provides that "[t]he Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof . . . ." U.S. Const. art. I, § 4, cl. 1. To run for U.S. Representative in the State of Oklahoma, "[a] person may become a candidate for office and have his name appear on a ballot only after he files a declaration of candidacy," meeting the requirements of the associated statutes. 26 Okla. Stat. § 5-101. "A declaration of candidacy must be accompanied by: (1) [a] petition supporting a candidate's filing signed by not fewer than two percent (2%) of the number of registered voters in the district, county or state, as appropriate for the office sought; or (2)[(c)] [a] cashier's check or

certified check . . . for candidates for United States Congress, One Thousand Dollars ($1,000.00) . . . ." *Id*. § 5-112(A). The state's compelling interest to regulate ballot access is necessary because it allows states to "avoid[ ] confusion, deception, and even frustration of the democratic process at the general election." *Jenness v. Fortson*, 403 U.S. 431, 442 (1971).[1]

Mr. Wright alleges that he attempted to file to be on the 2020 ballot for Oklahoma's 3rd Congressional District. [Doc. No. 25 at 1, 6]. There is no dispute that Mr. Wright did not satisfy either of the requirements of Section 5-112: paying a filing fee or presenting a petition supporting his candidacy signed by not fewer than 2% of the number of registered voters in the district. The Amended Complaint does not allege that Mr. Wright attempted to collect any signatures.

Liberally construing the claims,[2] Mr. Wright alleges that he is indigent and therefore the filing fee is a burden, and the coronavirus COVID-19 coupled with his

---

[1] A state may not require a filing fee as the sole means of gaining access to the ballot. *See Lubin v. Panish*, 415 U.S. 709, 715–19 (1974) (explaining that while the state has a "legitimate" interest "in keeping its ballots within manageable, understandable limits" by implementing means of testing "the seriousness of [the candidate's] candidacy", the state must offer alternative means of gaining access to the ballot other than paying a filing fee, such as "by [the candidate] persuading a substantial number of voters to sign a petition on his behalf") (citing *Bullock v. Carter*, 405 U.S. 134, 144–46 (1972)).

[2] As a pro se litigant, Mr. Wright's complaint is given more leeway than one drafted by counsel. *See Carpenter v. Williams*, 86 F.3d 1015, 1016 (10th Cir. 1996) (liberal construction of pro se litigant's complaint). Even though this Court must construe Mr. Wright's pleading liberally, it "should not assume the role of advocate . . . ." *Northington v. Jackson*, 973 F.2d 1518, 1520–21 (10th Cir. 1992). Some allowance is made for certain deficiencies, such as unfamiliarity with pleading requirements, failure to cite appropriate legal authority, and confusion of legal theories, *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005), but "the court cannot take on the

disabled veteran status creates a burden for him to gather the required number of signatures that are required by Oklahoma law. Mr. Wright alleges that he has lost income "as a direct result of Defendant's actions that include the Defendant depriving" him of running for office for a U.S. Representative because he claims to be unable to gather the signatures needed, leaving him with only the option of paying "fees per the Oklahoma statutes." [*Id*. at 1–2]. Mr. Wright claims that "[r]equiring fees from paupers to run for office is a discriminative barrier." [*Id*. ¶ 13(c)].

Mr. Wright appears to argue that because the federal court system has afforded him *in forma pauperis* status[3] and has also served the Amended Complaint for him, this is "precedent" for "aiding people of this [pauper] group in protecting rights . . . ." [*Id*. ¶ 13(d)–(e)]. He is seeking to be placed on the 2020 ballot for Oklahoma's 3rd Congressional District, seeking an injunction against the Oklahoma State Election Board to accept candidates without requiring fees or signatures, and seeking $348,000 in damages (i.e., two years' salary of a U.S. Representative at $174,000 per year). [*Id*. at 1, 5–6]. According to the Amended Complaint, Defendant Paul Ziriax ("Mr. Ziriax") is a member of the Oklahoma State Election Board who allegedly prevented Mr. Wright from

---

responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Id*. The Court also cannot "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

[3] Mr. Wright has sought and been granted *in forma pauperis* in this case as well as other cases that he has filed in this district. *See Wright v. Oaks*, CIV-19-1071-JD; *Wright v. Barbour, et al.*, CIV-20-201-JD; *Wright v. Okla. County*, CIV-20-346-JD; *Wright v. Rucker*, CIV-20-61-JD; and *Wright v. Arkansas Office of Child Support Enforcement*, CIV-20-371.

submitting his declaration of candidacy for Mr. Wright's failure to obtain the necessary signatures or pay the required fee. [*Id*. at 3–4].

Mr. Wright has made an as-applied challenge. He does not contend that 26 Okla. Stat. § 5-112 is unconstitutional on its face, he contends that it is unconstitutional as it is applied to him, a "pauper" during the coronavirus COVID-19 pandemic. [*Id.* at 3 (alleging individualized discrimination and "individually discriminative barriers")].

In the Motion, Mr. Ziriax contends that the Court lacks jurisdiction under Federal Rule of Civil Procedure 12(b)(1) because Mr. Ziriax is entitled to Eleventh Amendment Immunity. Mr. Ziriax argues that a "'suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.'" Motion at 3 (quoting *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)). As a result, the Motion seeks dismissal of any claims against Mr. Ziriax in his official capacity that seek money damages. *Id.* at 4.

The Motion also seeks dismissal of all claims under Rule 12(b)(6) because:

- Financial need alone is not a suspect classification for the purposes of the Fourteenth Amendment, citing *Harris v. McRae*, 448 U.S. 297, 323 (1980).

- The requirements of 26 Okla. Stat. § 5-112 are not unconstitutional under the Equal Protection Clause of the U.S. Constitution because the statute does not unconstitutionally treat Mr. Wright differently, he is treated "just as any other candidate" who elects to collect signatures in lieu of paying a filing fee.

- Even if Mr. Wright is in a recognized class for purposes of 26 Okla. Stat. § 5-112, the statute does not create an unconstitutional undue burden on Mr. Wright.
- Mr. Ziriax is entitled to qualified immunity because Mr. Wright cannot establish that Mr. Ziriax's action was "a violation of clearly established law."

*See generally* Motion at 3–13.

Mr. Wright filed a response to the Motion ("Response") [Doc. No. 38].[4] In the Response, Mr. Wright argues that Mr. Ziriax is not entitled to immunity because he was not acting in his official capacity because the "duties of the Defendant begin when a declaration of candidacy is received," and "there is no state or federal law which allow the declaration of candidacy to be rejected before being received." Response ¶ 2(k)–(l). He also argues that he has a recognized disability under 42 U.S.C. § 12102 resulting in him not having "enough time" to gather the signatures under Oklahoma's ballot requirements. *Id.* ¶ 9.

Upon review of the Motion, on September 18, 2020, the Court invited optional supplemental briefing on whether any of the claims in this matter are moot based on the timing of Mr. Wright's Amended Complaint. [Doc. No. 35]. Mr. Ziriax filed a response

---

[4] Although the Response is titled "Motion to Strike the Defendant's Motion to Dismiss [Doc. No. 33]," it is clear that the "Motion to Strike" is in substance a response to the Motion to Dismiss. *See Browder v. Director, Ill. Dep't of Corrs.*, 434 U.S. 257, 272 (1978) (Blackmun, J., concurring) (absent prejudice, courts should not "exalt nomenclature over substance") (citation omitted). Accordingly, the Court will construe this filing as a response and not a "Motion to Strike." To the extent that the "Motion to Strike" is intended to be a motion to strike and not a response to the Motion, the Court denies the request to strike the Motion because Mr. Wright has supplied no basis for the Court to strike the Motion from the docket.

[Doc. No. 37], arguing that Mr. Wright's request for injunctive relief is moot because the statutory deadline for filing the declaration of candidacy has long passed and because any Court order at this point would be unenforceable due to the timing of absentee ballots being mailed. Mr. Wright also responded. [Doc. No. 39]. While his response focuses on the merits of the Motion, he asserts that his deprivation of rights occurred "during the allowed time for submitting declaration of candidacy." *Id.* at 1.

## II. Discussion

### A. Mootness

Before the Court can address the constitutional questions, it must ensure that there is still a live controversy. Federal courts will not accept jurisdiction over a controversy that is moot. Before accepting jurisdiction, a federal court must be assured that it is not being called upon "to decide questions that cannot affect the rights of litigants in the case before [it]." *North Carolina v. Rice*, 404 U.S. 244, 246 (1971) (explaining resolution of mootness "is essential if federal courts are to function within their constitutional sphere of authority"). "Mootness is a jurisdictional question because the Court is not empowered to decide moot questions or abstract propositions . . . ." *Id.* (quotation and citation omitted).

"The mootness doctrine provides that although there may be an actual and justiciable controversy at the time the litigation is commenced, once that controversy ceases to exist, the federal court must dismiss the action for want of jurisdiction." *Jordan v. Sosa*, 654 F.3d 1012, 1023 (10th Cir. 2011). Because the mootness doctrine "relates to both the constitutional case or controversy requirement of Article III . . . as well as the

6

prudential considerations underlying justiciability. . . courts recognize two kinds of mootness: constitutional mootness and prudential mootness." *Id*. The constitutional mootness doctrine requires that "the suit must present a real and substantial controversy with respect to which relief may be fashioned," and "the controversy must remain alive at the trial and appellate stages of the litigation." *Id*. at 1024 (quotations omitted). Under the prudential-mootness doctrine, "[e]ven if a case is not constitutionally moot, a court may dismiss a case under the prudential-mootness doctrine if the case is so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the power to grant." *Id*. (quotations omitted).

      Oklahoma has numerous laws that govern candidacy in Title 26 of the Oklahoma statutes. The Supreme Court has repeatedly held that such laws further "compelling state interests" such as avoiding fraud, confusion, and "frustration of the democratic process." *Jenness*, 403 U.S. at 442. In Oklahoma, 26 Okla. Stat. § 5-110 provides that:

> Declarations of Candidacy provided herein must be filed with the secretary of the appropriate election board no earlier than 8:00 a.m. on the second Wednesday of April of any even-numbered year and no later than 5:00 p.m. on the next succeeding Friday. Such Declarations of Candidacy may be transmitted by United States mail, but in no event shall the secretary of any election board accept such Declarations after the time prescribed by law.

Thus, the filing period for the declarations of candidacy for the November 2020 elections began at 8:00 a.m. on April 8, 2020 and ended at 5:00 p.m. on April 10, 2020. *See id*.

      Mr. Wright filed the initial complaint on March 31, 2020 against the State of Oklahoma, only ten days before the end of the filing period. [*See* Doc. No. 1]. His

original complaint sought damages and to enjoin Oklahoma from requiring any candidate to pay the filing fee or obtain signatures and to place "any and all individuals on the ballot without any requirement of signature or money." [*Id.* at 7–8]. Mr. Wright sought to amend that complaint beginning on April 14, 2020 (i.e., *after* the statutory filing deadline) [Doc. Nos. 8–10], and the Court informed him in [Doc. No. 15] that he does not need Court leave to amend his complaint in these circumstances under Rule 15(a). Mr. Wright filed the Amended Complaint on July 29, 2020. [Doc. No. 25]. The operative complaint was not filed until over three months after the filing deadline. Mr. Wright has not sought relief from this Court or in the Amended Complaint from the statutory filing deadlines.

Mr. Ziriax states in [Doc. No. 37] that the claim for injunctive relief should be dismissed as moot because "there is no order that this Court could enter at this point regarding Plaintiff's name appearing on the ballot that would be enforceable." [Doc. No. 37 at 1–2]. As noted by Mr. Ziriax, absentee ballots started earlier this year with the COVID-19 pandemic, with Oklahoma County mailing absentee ballots in the first half of September. [*Id.* at 2].[5] Additionally, Mr. Ziriax recognizes that a narrow exception to the mootness doctrine exists for disputes that are "capable of repetition while evading review," and argues that the exception does not apply because Mr. Wright has not

---

[5] *See* Carmen Forman, *Absentee ballots going out in Oklahoma County*, The Oklahoman (Sept. 16, 2020), https://oklahoman.com/article/5665410/stitt-dismisses-idea-of-closing-down-economy-as-cases-continue-to-surge (last visited Nov. 2, 2020) ("The Oklahoma County Election Board on Friday began mailing absentee ballots for the Nov. 3 election.").

adequately alleged that the difficulties caused by the statutory requirements of 26 Okla. Stat. § 5-112 (his inability to pay the $1,000 fee or gather the required number of signatures due to the coronavirus COVID-19 pandemic) will exist in the future. [*Id*. at 2–5].

In *Storer v. Brown*, the Supreme Court held that plaintiffs could maintain their suit to have certain state ballot restrictions declared unconstitutional even though the election in which plaintiffs sought to appear on the ballot was "long over" and that "no effective relief can be provided to the candidates or voters" because that was "a case where the controversy is capable of repetition, yet evading review." 415 U.S. 724, 737 n.8 (1974) (quotations and citations omitted). The Court stated:

> The "capable of repetition, yet evading review" doctrine, in the context of election cases, is appropriate when there are "as applied" challenges as well as in the more typical case involving only facial attacks. The construction of the statute, an understanding of its operation, and possible constitutional limits on its application, will have the effect of simplifying future challenges, thus increasing the likelihood that timely filed cases can be adjudicated before an election is held.

*Id*.

The "capable-of-repetition exception to the mootness doctrine" is a "narrow" one and "is only to be used in exceptional situations." *Jordan*, 654 F.3d at 1034 (quotations omitted). This exception to the mootness doctrine requires that: (1) the duration of the challenged conduct is "too short to be fully litigated prior to its cessation or expiration"; and (2) there is "a reasonable expectation that the same complaining party [will] be subjected to the same action again." *Gannett Co., Inc. v. DePasquale*, 443 U.S. 368, 377

(1979) (quotations and citation omitted); *Grant v. Meyer*, 828 F.2d 1446, 1449 (10th Cir. 1987) (en banc) (explaining the same "two requirements must be met").

Mr. Wright's claims are constitutionally moot because there is no "substantial controversy with respect to which relief may be fashioned." *Jordan*, 654 F.3d at 1024 (quotations omitted). As described above, the operative complaint was not filed until over three months after the filing deadline, and Mr. Wright has not sought relief from the statutory filing deadlines. Further, as stated by Mr. Ziriax, "there is no order that this Court could enter at this point regarding Plaintiff's name appearing on the ballot that would be enforceable." [Doc. No. 37 at 1–2]. Mr. Wright's claims for non-monetary relief are constitutionally moot.[6]

Mr. Wright has not established that the alleged conduct is "capable of repetition, yet evading review," a narrow exception to the mootness doctrine. The Court recognizes the complications that the coronavirus COVID-19 has posed in 2020, but as Mr. Ziriax notes in [Doc. No. 37 at 3–4], there is no indication that these complications will be repeated in each subsequent election, no indication that Mr. Wright intends to run in the future, and no indication that if he runs again, he will encounter the same complications. Oklahoma started with less onerous coronavirus COVID-19 "lockdown" restrictions than

---

[6] Even if the claims were not constitutionally moot, "considerations of prudence and comity would lead [the Court] to stay [its] hand in resolving" the claims under prudential mootness, *Jordan*, 654 F.3d at 1029, because absentee ballots have already been mailed out, and granting the relief Mr. Wright seeks, based on an Amended Complaint alleging questionable grounds for relief and filed after the declaration of candidacy filing deadline, would introduce unwarranted chaos into the election.

many other states,[7] and Oklahoma's restrictions are being relaxed.[8] The Governor of Oklahoma has previously dismissed the possibility of closing the state down again and said that "it wasn't under discussion."[9]

There is no indication that Mr. Wright will face the same alleged burdens in two years when he can run again for Oklahoma's 3rd Congressional District, or in any subsequent race. Other cases that have analyzed this issue have also concluded that restrictions imposed by coronavirus COVID-19 are *not* "capable of repetition, yet evading review." *See Spell v. Edwards*, 962 F.3d 175, 180 (5th Cir. 2020) ("To be sure, no one knows what the future of COVID-19 holds. But it is speculative, at best, that the Governor might reimpose the ten-person restriction or a similar one."); *People First of Ala. v. Merrill*, No. 2:20-CV-00619-AKK, 2020 WL 4747641, at *2 n.5 (N.D. Ala. Aug. 17, 2020) (regarding argument that restrictions imposed by the pandemic are capable of repetition, yet evading review, "such unpleasant conjecture is far too speculative and remote to constitute a case or controversy under Article III"); *World Gym, Inc. v. Baker*,

---

[7] *See* Sarah Mervosh, Denise Lu & Vanessa Swales, *See Which States and Cities Have Told Residents to Stay at Home*, The New York Times (updated Apr. 20, 2020), https://www.nytimes.com/interactive/2020/us/coronavirus-stay-at-home-order.html (last visited Nov. 2, 2020).

[8] *See* Jasmine C. Lee, Sarah Mervosh, Yuriria Avila, Barbara Harvey and Alex Leeds Matthews, *See How All 50 States Are Reopening (and Closing Again)*, The New York Times (updated Oct. 29, 2020), https://www.nytimes.com/interactive/2020/us/states-reopen-map-coronavirus.html (last visited Nov. 2, 2020).

[9] *See* Chris Casteel, *Stitt dismisses idea of closing down economy as cases continue to surge*, The Oklahoman (June 26, 2020), https://oklahoman.com/article/5665410/stitt-dismisses-idea-of-closing-down-economy-as-cases-continue-to-surge (last visited Nov. 2, 2020).

No. 20-CV-11162-DJC, 2020 WL 4274557, at *2 (D. Mass. July 24, 2020) ("Although it remains possible that Massachusetts will experience a resurgence of rapid COVID-19 cases, it cannot be said that there is a 'demonstrated probability' that one will occur and, if one does occur, that the Governor will execute the same [restrictive] orders."); *Cameron v. Beshear*, No. 3:20-CV-00023-GFVT, 2020 WL 2573463, at *2 (E.D. Ky. May 21, 2020) (concluding that the exception did not apply to a mooted claim challenging expired COVID-19 restrictions in part because "it seem[ed] unlikely that [they] w[ould] be reissued").

The alleged burdens in this case appear temporary, not "capable of repetition, yet evading review." *See Jordan*, 654 F.3d at 1034. Any assertions by Mr. Wright that he might face these same restrictions in the future are too speculative or hypothetical, which is insufficient to support the "narrow" application of this exception, which is reserved for "exceptional situations." *See id*. *See also Spell*, *People First*, *World Gym*, and *Cameron*, cited *supra.*

The Amended Complaint does not seek to extend or modify the filing deadline or allege any unconstitutional aspects of the filing deadline.[10] Accordingly, Mr. Wright's

---

[10] Additionally, nothing in the Amended Complaint or subsequent filings establishes that anything prevented Mr. Wright from gathering or attempting to gather the required signatures *before* the pandemic restrictions were put in place in Oklahoma. *See* Motion at 8 (explaining nothing barred Mr. Wright "from gathering petition signatures to satisfy this alternative means of ballot access prior to the coronavirus pandemic impacting Oklahoma, nor does he plead that this was the case"). *Cf. Libertarian Party of Illinois v. Pritzker*, 455 F. Supp. 3d 738, 744  (N.D. Ill. 2020), *aff'd sub nom. Libertarian Party of Illinois v. Cadigan*, 824 F. App'x 415 (7th Cir. 2020) (Illinois Election Code window for gathering signatures "opened at nearly the same time that Governor Pritzker first imposed [COVID-19 lockdown] restrictions").

constitutional claims are dismissed as moot because he did not file the operative complaint until over three months after the filing deadline (April 10, 2020). Mr. Wright's claims for monetary damages are not necessarily mooted under this principle, and those claims are discussed below.

**B.   Eleventh Amendment Immunity**

Mr. Wright's Amended Complaint states that jurisdiction for his lawsuit against Mr. Ziriax exists under 28 U.S.C. § 1331 and § 1343(a)(3) to enforce his federal rights under 42 U.S.C. § 1983. [Doc. No. 25 at 1–2]. Mr. Wright bears the burden of establishing jurisdiction. *See Penteco Corp. Ltd. P'ship—1985A v. Union Gas Sys., Inc.*, 929 F.2d 1519, 1521 (10th Cir. 1991) ("Since federal courts are courts of limited jurisdiction, there is a presumption against our jurisdiction, and the party invoking federal jurisdiction bears the burden of proof.") (citation omitted).

"[I]t is settled that the jurisdiction of a court of the United States must appear from distinct allegations, or from facts clearly proven, and is not to be established argumentatively or by mere inference." *Thomas v. Bd. of Trs. of Ohio State Univ.*, 195 U.S. 207, 218 (1904). "The presumption is that a cause is without [ ] jurisdiction . . . unless the contrary affirmatively and distinctly appears." *Id.* (citation omitted).

Mr. Ziriax has asserted Eleventh Amendment immunity. *See* Motion at 3–4. The Eleventh Amendment grants immunity to the states from "any suit in law or equity . . . by Citizens of another State" or by their own citizens." U.S. Const. amend. XI; *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) (explaining that Supreme Court caselaw extends "the [Eleventh] Amendment's applicability to suits by citizens against

their own States"). "Once effectively raised, the Eleventh Amendment becomes a limitation on [a court's] subject-matter jurisdiction . . . ." *Harris v. Owens*, 264 F.3d 1282, 1288 (10th Cir. 2001). There are three exceptions, however, to the Eleventh Amendment's sovereign immunity to states:

> First, a state may consent to suit in federal court. Second, Congress may abrogate a state's sovereign immunity by appropriate legislation when it acts under Section 5 of the Fourteenth Amendment. Finally, under *Ex parte Young*, 209 U.S. 123 (1908), a plaintiff may bring suit against individual state officers acting in their official capacities if the complaint alleges an ongoing violation of federal law and the plaintiff seeks prospective relief.

*Levy v. Kansas Dep't of Soc. & Rehab. Servs.*, 789 F.3d 1164, 1169 (10th Cir. 2015) (citation omitted).

Sovereign immunity under the Eleventh Amendment extends to state agencies. *See Mt. Healthy City Sch. Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274, 280 (1977) (explaining that sovereign immunity extends to state agencies functioning as an arm of the state); *Washington v. Okla. State Dep't of Human Servs.*, 802 F. App'x 419, 420–21 (10th Cir. 2020) (unpublished) (recognizing Oklahoma State Department of Human Services is an arm of Oklahoma and is entitled to Eleventh Amendment immunity and district court "correctly held that in light of the Eleventh Amendment, it lacked subject-matter jurisdiction to hear the claims . . . .").

The Oklahoma State Election Board is a state agency that is immune from monetary damages under the Eleventh Amendment (unless an exception applies). *See De La Fuente v. Ziriax*, No. CIV-16-0914-F, 2016 WL 10537015, at *4 (W.D. Okla. Dec. 13, 2016) ("[t]he Oklahoma State Election Board is DISMISSED based on its eleventh

amendment immunity"); *Crussel v. Oklahoma State Election Bd.*, 497 F. Supp. 646, 653 (W.D. Okla. 1980). This immunity extends to officers of a state agency, like Mr. Ziriax, when sued in their official capacity. *See, e.g.*, *Will*, 491 U.S. at 71 ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.").

As Mr. Ziriax notes, Oklahoma has not waived Eleventh Amendment immunity, nor has Congress abrogated Oklahoma's immunity. Motion at 4. This leaves only *Ex parte Young* as a possible exception to immunity, where a "plaintiff may bring suit against individual state officers acting in their official capacities if the complaint alleges an ongoing violation of federal law and the plaintiff seeks prospective relief." *Levy*, 789 F.3d at 1169. For this exception to apply, Mr. Wright must "seek only declaratory and injunctive relief rather than monetary damages for alleged violations of federal law . . . aimed against state officers acting in their official capacities, rather than against the State itself." *Hill v. Kemp*, 478 F.3d 1236, 1255–56 (10th Cir. 2007).

Here, Mr. Wright is not explicit in the Amended Complaint whether his claims asserted against Mr. Ziriax are in his official capacity, individual capacity, or both. [*See* Doc. No. 25 ¶¶ 7 (alleging Mr. Ziriax is an "acting member of the Oklahoma State Election Board"), 13 (alleging the "Oklahoma State Election Board placed people beside the ballot box entry"); 13(f) ("Paul Ziriax was not acting in 'scope of employment'") 13(i) ("Paul Ziriax acted under color of law . . . when refusing the Plaintiff's Declaration of Candidacy"), 23 (alleging a permanent injunction against the Oklahoma State Election Board)]. His later filings appear to argue that the suit is against Mr. Ziriax in his

individual capacity. [*See* Doc. No. 38 ¶ 3 ("The Defendant, at the time the alleged deprivation of rights began . . ., was not acting in his official capacity."); *id.* ¶ 8 ("The Defendant cannot claim immunity when the Defendant was not acting in his official capacity.").]

As stated above, the Court has dismissed all non-monetary claims for relief as moot. For any remaining claims for *money damages* asserted against Mr. Ziriax in his *official* capacity, Mr. Ziriax is immune from such claims under the Eleventh Amendment, and this immunity deprives this Court of jurisdiction. *See Edelman v. Jordan*, 415 U.S. 651, 678 (1974); *Harris*, 264 F.3d at 1288. Accordingly, Mr. Wright's claims against Mr. Ziriax in his official capacity must be dismissed without prejudice. *See Albert v. Smith's Food & Drug Ctrs., Inc.*, 356 F.3d 1242, 1249 (10th Cir. 2004) ("In cases where the district court has determined that it lacks jurisdiction, dismissal of a claim must be without prejudice.").

**C.   Qualified Immunity**

Finally, regarding claims for monetary damages asserted against Mr. Ziriax in his *individual* capacity, the Motion asserts that Mr. Ziriax is entitled to qualified immunity. Motion at 11–13. When the defendant asserts a qualified-immunity defense, a plaintiff must satisfy a two-pronged test to avoid dismissal. *Comprehensive Addiction Treatment Ctr. v. Leslea*, 552 F. App'x 812, 815 (10th Cir. 2014) (unpublished). Qualified immunity shields government officials from money damages unless a plaintiff establishes (1) that the official violated a statutory or constitutional right, and (2) that right was "clearly established" at the time of the challenged conduct. *Id.* (quotation and citation omitted);

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Whether a plaintiff has alleged a violation of his clearly established constitutional rights to overcome a qualified immunity defense is an issue of law. *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011). This Court has discretion to "'decid[e] which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.'" *Id.* (quoting *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

Whether a right is clearly established turns on "whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation." *Leslea*, 552 F. App'x at 815–16 (quoting *McBeth v. Himes*, 598 F.3d 708, 716 (10th Cir. 2010)). "Ordinarily, in order for the law to be clearly established, there must be a relevant Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other circuits must have found the law to be as the plaintiff maintains, . . . such that existing precedent has placed the statutory or constitutional question beyond debate." *Id.* at 816 (internal citations omitted). "The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior caselaw to clearly establish the violation." *Id.* (quoting *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004)).

Here, Mr. Wright has not offered, and this Court has not found, clearly established law demonstrating that Mr. Ziriax's alleged misconduct violated Mr. Wright's statutory or constitutional rights. *See id.* at 815.[11] For such a claim to be viable, the

---

[11] It is unnecessary to decide whether the facts alleged by Mr. Wright make out a violation of a constitutional right given such right is not clearly established under an

unconstitutionality of 26 Okla. Stat. § 5-112 would need to be "clearly established" when Mr. Ziriax did not accept Mr. Wright's incomplete declaration of candidacy, meaning that it would then violate Mr. Wright's constitutional rights if Mr. Ziriax did not accept the incomplete declaration of candidacy. *See id.* Far from this being the case, for decades courts have rejected constitutional challenges to Oklahoma's election laws. *See De La Fuente*, 2016 WL 10537015, at *2 (collecting cases).

There has been no showing that "it would be clear to [Mr. Ziriax as a reasonable official] that his conduct was unlawful in the situation he confronted." *Stearns v. Clarkson*, 615 F.3d 1278, 1282 (10th Cir. 2010). Stated a different way, there has been no showing that it was "unreasonable" for Mr. Ziriax to refuse Mr. Wright's incomplete declaration of candidacy, nor was his conduct "obviously egregious." *See Leslea*, 552 F. App'x at 815. *See also Whitfield v. Thurston*, No. 4:20-CV-00466-KGB, 2020 WL 3451692, at *18 (E.D. Ark. June 24, 2020) (collecting and contrasting cases upholding, modifying, and enjoining various states' ballot-access laws in light of coronavirus COVID-19). At most, Mr. Wright presented an entirely novel theory to Mr. Ziriax—an interplay between the requirements of 26 Okla. Stat. § 5-112 and the Constitution, Mr. Wright's alleged "pauper" and disabled status, and complications caused by the

---

objective test. However, there is no statutory right to run for office with an incomplete declaration of candidacy; indeed, 26 Okla. Stat. § 5-112 requires the $1,000 filing fee or signatures from 2% of the number of registered voters in the district in order to have a statutory right to be on the ballot—neither of which were met here. *See id.* And courts have continually upheld this provision. *See De La Fuente*, 2016 WL 10537015, at *2 (collecting cases).

coronavirus COVID-19 pandemic. *See Acosta v. Wolf*, No. CV 20-2528, 2020 WL 3077098, at *6 (E.D. Pa. June 10, 2020) (dismissing a similar lawsuit *sua sponte*).

Although Mr. Wright argues that "there is no state or federal law which allow the declaration of candidacy to be rejected before being received," Response ¶ 2(k), 26 Okla. Stat. § 5-117 (emphasis added) provides that:

> The secretary of any election board shall accept any Declaration of Candidacy which the secretary is authorized to accept, *except such Declaration which on its face shows that the candidate does not meet the qualifications to become a candidate for the office set forth as contained in the Oklahoma Constitution, statutes or resolution calling the election*.

Moreover, the Constitution specifically leaves to the state the ability to prescribe the "Times, Places, and Manner of holding Elections for Representatives . . . ." U.S. Const. art. I, § 4, cl. 1. Taken as a whole, it is clear from his allegations that Mr. Wright failed to meet the requirements of 26 Okla. Stat. § 5-112, meaning Mr. Ziriax should not have accepted his incomplete declaration of candidacy, and Mr. Wright has not shown that any right he had to submit an incomplete declaration of candidacy was clearly established. In sum, Mr. Wright has not established that his individual-capacity claims against Mr. Ziriax—giving Mr. Wright the benefit that he has alleged such claims, which is not clear from the Amended Complaint itself—survive Mr. Ziriax's assertion of qualified immunity. Accordingly, any such claims are also dismissed.

### III. Conclusion

For these reasons, the Court GRANTS the Motion [Doc. No. 33] and DISMISSES Mr. Wright's claims and this action in its entirety without prejudice. All other pending motions are denied as moot.

**IT IS SO ORDERED** this 2nd day of November 2020.

_____
JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE